```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE CENTRAL DISTRICT OF ILLINOIS
 2

 3   UNITED STATES OF AMERICA,      )
                                    )
 4              Plaintiff,          )
                                    )
 5      vs.                         ) No. 09-cr-30098-DRH
                                    )
 6   MICHAEL C. FINTON,             )
                                    ) July 20, 2010
 7              Defendant.          )
```

## TRANSCRIPT OF PROCEEDINGS
### MOTION HEARING
### BEFORE THE HONORABLE DAVID R. HERNDON
### CHIEF UNITED STATES DISTRICT COURT JUDGE

**APPEARANCES:**

| | |
|---|---|
| For the Plaintiff: | David E. Risley, Esq. |
| | Eric Long, Esq. |
| | Assistant U.S. Attorneys |
| | 318 S. Sixth Street |
| | Springfield, IL  62701 |
| | (217) 492-4450 |
| | |
| | Alamdar Shabbir Hamdani, Esq. |
| | Assistant Attorney General |
| | 950 Pennsylvania Avenue NW |
| | Washington, DC  20530 |
| | (202) 514-0463 |
| | |
| For the Defendant: | Robert J. Scherschligt, Esq. |
| | Robert Alvarado, Esq. |
| | Federal Public Defender |
| | 600 E. Adams, 2nd Floor |
| | Springfield, IL  62701 |
| | (217) 492-5070 |
| | |
| Court Reporter: | Laura A. Blatz, RPR, CRR |
| | U.S. District Court |
| | 750 Missouri Avenue |
| | East St. Louis, IL  62201 |
| | (618) 482-9481 |

Proceedings recorded by mechanical stenography;
transcript produced by computer.

1     *(Court convened)*

2         *THE COURT:* We've called the matter of
3 *United States of America vs. Michael C. Finton*, Case
4 No. 09-30098. The Government is present and represented by
5 Assistant United States Attorney David Risley, Assistant
6 United States Attorney Eric Long, and Assistant Attorney
7 General Alamdar Hamdani. Good morning, gentlemen.

8         *MR. RISLEY:* Good morning.

9         *THE COURT:* In my district I look over here to look
10 at the prosecutors. It's different here. Defendant's
11 present in court. He is with counsel, Robert Scherschligt
12 and -- is it Robert Al --

13         *MR. ALVARADO:* Alvarado, Judge.

14         *THE COURT:* Apologize for that.

15         We originally called this matter for a hearing
16 relative to the issues surrounding the psychiatric
17 evaluation that I ordered relative to Mr. Finton. Just had
18 a conversation in chambers because Mr. Finton has filed some
19 pro se motions, and I wanted to find out if Mr. Finton was
20 going to persist in these pro se motions. It sounds like
21 that's going to be the case.

22         Mr. Finton, let me direct these comments to you.
23 You filed a motion that you called Petition for Dismissal of
24 Counsel, filed that on July 15th. And in order to narrow
25 the issues relative to this motion that you filed, it sounds

1  to me like you're not complaining about the work performance
2  of your lawyers; is that true, sir?
3          *THE DEFENDANT:* I'm not addressing that at the
4  moment.
5          *THE COURT:* But that's -- and that's not addressed
6  in this motion, correct?
7          *THE DEFENDANT:* Correct.
8          *THE COURT:* What you address really in this motion
9  is that, through the course of the pendency of the case --
10 and I'm trying to state this as delicately as I can, but you
11 don't want the lawyers to be distracted with the concept
12 that they at points in time are in and out of this
13 courthouse, and you don't want them to begin to focus at
14 some point in time on that fact, sort of conflicting
15 interests so-to-speak, because the judges in this courthouse
16 have recused themselves, and kind of a like concept.  Is
17 that a fair assessment of your motion?
18         *THE DEFENDANT:* Yes, sir.
19         *THE COURT:* The judges in the case recused
20 themselves, and it's really under some case law that --
21 *United States vs. Nettles*.  It's a Seventh Circuit case.
22 Are you familiar with the case?
23         *THE DEFENDANT:* No, sir.
24         *THE COURT:* When you filed the motion did you have
25 an opportunity to do any research on the issue or is this

1   just something that kind of made common sense to you because
2   the other people that were in the courthouse had gotten off
3   the case?
4          *THE DEFENDANT:*  Yes, sir.  And to your second
5   question, I'm not really allowed access to the law library.
6          *THE COURT:*  Okay.  In that case the Seventh Circuit
7   said that the judges should recuse themselves because of a
8   similar situation, allegations similar to what have been
9   made in this case.  But one of the interesting things about
10  that, in that case there was no discussion about the lawyers
11  representing the Defendant.  It was just not an issue in the
12  case, so there's -- I can't say to you, and no one can argue
13  here that there's a holding in the case that the lawyer
14  representing the Defendant must be someone who doesn't go in
15  and out of the courthouse, someone within sort of a zone of
16  danger, anything like that.
17         As a matter of fact, the lawyer that was
18  representing the Defendant was someone who regularly appears
19  in that courthouse.  So you couldn't, for example, say to
20  me, *You know, Judge Herndon, in that Nettles case they spoke*
21  *to this issue and they said that the lawyer representing the*
22  *Defendant has to be someone who has no association with the*
23  *courthouse that was the subject of the allegations in the*
24  *case.*  There just hasn't been a case, to my knowledge, that
25  even discusses this issue, so this is kind of the first

1   time, if you will, that a Defendant raises this issue, *Hey,*
2   *you know, everybody else gets out of the case that's*
3   *associated with the courthouse. Why is it that I have*
4   *lawyers who regularly do business in the courthouse?*
5           Mr. Scherschligt, where is your office located?
6           *MR. SCHERSCHLIGT:* We are about a block to the
7   north of the courthouse, Judge. We're at Sixth and Adams,
8   and the courthouse is at Sixth and Monroe.
9           *THE COURT:* And I know the answer to this question,
10  but for purposes of this record, your ethical obligation
11  when you take on a case is what?
12          *MR. SCHERSCHLIGT:* Well, we would zealously
13  represent Mr. Finton just as we would represent any other
14  client, Judge.
15          *THE COURT:* And have you ever felt a conflict with
16  that ethical obligation during the course of your
17  representation of Mr. Finton?
18          *MR. SCHERSCHLIGT:* Not at all, Judge.
19          *THE COURT:* Have you ever felt or even thought
20  about this issue of, *Hey, I could have been there that day,*
21  *or the day these allegations were made?* And of course,
22  we're not even touching on the issue of guilt or innocence
23  here, but just have you ever even thought about that
24  concept?
25          *MR. SCHERSCHLIGT:* Well, I've thought about the

1   fact that we are regularly in that courthouse, but no, that
2   would have no effect on my ability to be -- to have an
3   undivided loyalty to Mr. Finton.
4           *THE COURT:*  Okay.  All right.
5           Mr. Finton, let me ask you this:  There's
6   absolutely no dispute about the fact that what you face in
7   this case is very serious in terms of potential punishment.
8   I mean the statutory term is any number of years up to life.
9   And you're familiar with that?
10          *THE DEFENDANT:*  Yes, sir.
11          *THE COURT:*  And the guidelines, if I -- in my look
12  at the guidelines, the guideline range in this case is
13  extraordinarily serious, something like probably 30 years to
14  life, if I've calculated them right.  That's a ballpark
15  figure.  Don't hold me to that, but -- because I'll make a
16  further determination if I ever get to that point.  If
17  you're found guilty or ever plead guilty, that would be the
18  only time I'd make an official calculation, but in any
19  event, you're facing something extraordinarily serious in
20  terms of punishment if you're found guilty or plead guilty.
21  We can all agree on that, true?
22          *THE DEFENDANT:*  Yes, sir.
23          *THE COURT:*  So at the end of the day, one thing
24  that we can also agree on -- and I think this side of the
25  courtroom agrees with me just as much as this side of the

1   courtroom -- and that is, nobody wants you to go through
2   this process without understanding that you've received
3   fairness in every part of the proceeding, every step of the
4   way.  Do you feel like your representation is compromised in
5   some way because of the things that you talk about in your
6   motion?
7             *THE DEFENDANT:*  Yes, sir.
8             *THE COURT:*  And you feel that way because of this
9   logical concept that you have in your mind that, *These other*
10  *people have taken themselves out of the case, and,*
11  *therefore, why should I have someone represent me that is in*
12  *a similar position with these other people?*
13            *THE DEFENDANT:*  Yes, sir.
14            *THE COURT:*  That's true?  Okay.
15            Mr. Risley, does the Government take a position in
16  this matter?
17            *MR. RISLEY:*  Your Honor, the Government doesn't
18  really care who the Defendant's attorney is.  We do care
19  whether he has competent and conflict-free representation,
20  that his representation meets with constitutional standards,
21  but beyond that, we don't really take a position in this.
22            We're aware of the interests that the Defendant has
23  in this case.  We can understand his argument.  By the same
24  token, the logic applies to virtually any attorney in the
25  Central District of Illinois or anywhere else who has a

1    federal practice in this building.  Our really only concern,
2    in practical terms, is, we've spent -- we've invested a lot
3    in the discovery process and all of that with these
4    attorneys, and they have done a fine job in our -- just from
5    our interaction with them in the course of this case.  We
6    know that to be true.  We have no questions about their
7    competence.  We've dealt with them in many other cases.
8    They're highly competent and they've been vigorously
9    defending the Defendant's interests in this case.  If we
10   start all over again for some reason with new attorneys, we
11   hope it would be for a good reason and not a frivolous
12   reason, but beyond that, we have no real position other than
13   that.
14           *THE COURT:*  Mr. Finton, Mr. Risley brings up a
15   point.  The point is -- and I have no personal knowledge of
16   this at this point in time, other than what I understand
17   from ruling on a Motion to Continue at this point -- not
18   this point -- at some point earlier in the litigation.  It
19   was filed by your lawyer, having to do with needing
20   additional time to get through the voluminous discovery.  So
21   I gather from that that the documentation in this case is
22   quite substantial.  So I have no problem in giving someone
23   the remedy that they seek on some fairness basis.
24           On the other hand, if someone is seeking some sort
25   of remedy because they're either trying to put off the

1  inevitable, trying to waste time, trying to just buy time
2  for something that is just not an appropriate part of the
3  litigation process, that's a different story all together.
4  Because you see, if you get a new lawyer, well, that lawyer
5  has to start from the beginning and go through all of that
6  discovery, all of those documents and the like.
7        I take it, first of all, you want to be represented
8  by a lawyer; you're not interested in representing yourself?
9        *THE DEFENDANT:*  That's correct, sir.
10       *THE COURT:*  So while on the one hand I understand
11 your logic -- I'm not saying it has a legal basis, but I
12 understand your logic, and the reason I say, *I'm not saying*
13 *it has a legal basis*, is because you're going somewhere
14 where no one else has gone before.  There's been a lot of
15 back and forth lately and my concern is that perhaps part of
16 your motivation is just to buy time, maybe just to get a
17 second opinion.  What about not discharging these lawyers,
18 but adding someone to the team?  Is that something that's
19 acceptable to you?
20       *THE DEFENDANT:*  Yes, Your Honor.  It's just that
21 due to the seriousness of the potential consequences in this
22 case, I just want to be totally clear on everything.  I want
23 to make sure that -- I want to make sure everything's on the
24 up and up.
25       *THE COURT:*  And I don't -- I'm not disagreeing with

1  your logic here either.  So part of your motivation is to
2  put a new set of eyes on the case?
3          *THE DEFENDANT:*  Not really.  It's just that I put
4  myself in his position, you know, and I mean it's not
5  just -- he comes into the building, they know people here.
6  If I were in his position I would probably ask myself -- I
7  would probably remove myself from the case just to alleviate
8  any concerns.
9          *THE COURT:*  So part of your concern is a concern
10 that, you know, *Is the advice I'm getting here tainted by*
11 *this concept that, you know, hey, I'm giving advice to a guy*
12 *that's accused of doing something -- accused of planting a*
13 *bomb that would have blown up this building, and I'm working*
14 *with these same people, and how are they going to look at me*
15 *afterwards*, things like that; that's your concern?
16         *THE DEFENDANT:*  Yes, Your Honor.  It seems to be
17 about the same thing as if I were accused of robbing a gas
18 station and putting the guy who stocks the shelves as my
19 attorney, you know, and that didn't seem like it would fly
20 very far.
21         *THE COURT:*  So you have more -- you put more focus
22 on that sort of a practical concern than you do on this
23 ethical consideration that I brought up a little bit ago?
24         *THE DEFENDANT:*  Well, I mean it's both.  It's both.
25 I just wanted to make clear that I'm not trying to be

1  frivolous, I'm not trying to waste time or anything like
2  this.
3             *THE COURT:*  What about if I appointed the Public
4  Defender's office from the Southern District of Illinois,
5  where I come from, initially to add to the team?  I'm not
6  sure that Mr. Scherschligt's office would even agree to
7  that.  They may just withdraw and say, *We're not going to*
8  *participate in a tag team*, so-to-speak.  But at least to try
9  to avoid having to start from scratch.  You meet with them,
10 and in the end it may be that they will ultimately become
11 the sole attorneys of record, but at least start with that
12 prospect that maybe they can work together with your lawyer,
13 and then if that doesn't work out, they become the attorneys
14 of record in your case.
15            *THE DEFENDANT:*  Is it possible to have a pro bono
16 attorney, appoint a criminal attorney rather than somebody
17 from the Public Defender's office at all?
18            *THE COURT:*  You mean somebody off the CJA panel?
19            *THE DEFENDANT:*  Yes, sir.
20            *THE COURT:*  From this district or from the Southern
21 District?
22            *THE DEFENDANT:*  From the Southern District.
23            *THE COURT:*  I could do that.  I don't have a
24 problem with that.  Again, to work with your attorney or to
25 be sole attorney of record?

1         *THE DEFENDANT:*  Whatever you feel is best,
2    Your Honor.
3         *THE COURT:*  What I'm trying to do is not -- and the
4    bottom line is, I want you to feel like you're receiving
5    fair representation.  My idea in adding counsel to this
6    would be to try to avoid losing valuable time, not only for
7    you, but we -- there are two interests here:  You have a
8    right to speedy trial but so does the public, Mr. Finton,
9    and I know you don't have very big concern about the
10   public's interest here, but that's a concern I have as well,
11   and I have to look at the public interest here.
12        So if we can avoid losing valuable time, however
13   this thing's going to end up, whether it's a trial of the
14   case or some other disposition, it gives you an opportunity
15   for that second opinion, if you will.  This is a complex
16   case, there's no question about it.  I don't have any
17   problem at all seeing that you get another opinion if that's
18   one of the things you're interested in.  I don't see that as
19   an inappropriate step at all.  Is that something you're
20   interested in?
21        *THE DEFENDANT:*  Yes, sir.
22        *THE COURT:*  All right.  I'll appoint a CJA panel
23   lawyer from the Southern District, initially to work with
24   your counsel, and if they have a problem with that, then
25   we'll talk about that.

1        *THE DEFENDANT:*  Thank you, Your Honor.
2        *THE COURT:*  Now, you had an issue with respect
3  to -- you said that your contacts were taken from you and --
4  do you not have glasses?
5        *THE DEFENDANT:*  Correct, sir.
6        *THE COURT:*  So you have -- right now you're not
7  able to see correctly, is that --
8        *THE DEFENDANT:*  Well, it's blurry.  They were
9  medicated contacts.  I had a prescription for them.
10       *THE COURT:*  Okay.  And to your knowledge, where are
11 these contacts?
12       *THE DEFENDANT:*  They are in the possession of the
13 Federal Bureau of Investigation.
14       *THE COURT:*  Okay.  So my direction will be that the
15 Marshal Service, in whose custody you are, are either going
16 to get you a correct set of contacts or glasses, whichever
17 it takes.  I mean there's no reason for you not to see
18 correctly.  I can't imagine you not seeing correctly.
19       *THE DEFENDANT:*  Thank you, Your Honor.
20       *THE COURT:*  And Mr. Scherschligt, you'll follow up
21 on this?  I don't know why he can't -- I mean they're
22 supposed to provide him with appropriate medical care, and
23 seeing correctly is appropriate medical care.
24       *MR. SCHERSCHLIGT:*  I will follow up, Judge.
25       *THE COURT:*  All right.  So that's my order and

1   direction to the Marshal Service.
2      *THE DEFENDANT:*  And about the money, sir?
3      *THE COURT:*  Pardon me?
4      *THE DEFENDANT:*  I had a question also about the
5   $158 that was in my possession when I was arrested.
6      *THE COURT:*  Is that the subject of some seizure?
7      *MR. RISLEY:*  I can speak to that, Your Honor.  The
8   contacts we're keeping because they were colored.  They
9   would be evidence in the case.  The money that was on his
10  person at the time is not evidence.  It's my understanding
11  the FBI has it in their evidence vault.  They have to go
12  through the process of getting it out of there, but we can
13  return it to anybody that the Defendant designates as the
14  recipient, so we'll take care of that even informally with
15  the Defendant's attorneys.
16     *THE COURT:*  I don't have a problem not returning
17  contacts or evidence but the Marshal Service has an
18  obligation to provide him with appropriate medical care, and
19  that includes appropriate corrective --
20     *THE DEFENDANT:*  There's more than one set in the
21  box that was in my suitcase when I was arrested.  There's
22  more than one set of contacts.
23     *THE COURT:*  You can't get back what's evidence.
24  Now, if both pair of contacts are evidence, you can't get
25  that back, but that doesn't mean that you're not entitled to

1   corrective lenses, period.
2           *MR. RISLEY:*  But we certainly can look and see what
3   the prescription is and who the doctor may be, and we can go
4   from there.
5           *THE COURT:*  Absolutely.  Now, as far as the copy of
6   the docket sheet, we've got a copy here.  We're going to
7   give you a copy of your docket sheet.  That's not a problem.
8           *THE DEFENDANT:*  Thank you, Your Honor.
9           *THE COURT:*  Now, we're not going to do the
10  competency issue until we've got the -- until your new
11  lawyer comes on board so that we can -- unless you -- do you
12  want to take care of that today?
13          *THE DEFENDANT:*  That's fine, sir.
14          *THE COURT:*  You want to do it today?
15          *THE DEFENDANT:*  Whatever you think's best.
16          *THE COURT:*  It's not what I think best because if
17  you have any question at all about your current set of
18  attorneys handling that, I'm not going to go forward with
19  it.  Do you want to proceed with it?
20          *THE DEFENDANT:*  I'd rather wait, sir.
21          *THE COURT:*  Anything else we have to take care of
22  today?
23          *MR. RISLEY:*  I don't know of anything else,
24  Your Honor.
25          *THE COURT:*  Nothing else has been filed,

1   Mr. Scherschligt?

2       *MR. SCHERSCHLIGT:* I believe that covers it,
3   Your Honor.

4       *THE COURT:* Mr. Finton, anything else?

5       *THE DEFENDANT:* I do have one motion I want to -- I
6   brought with me in court today.

7       *THE COURT:* Would you hand it to your lawyer, let
8   him bring it up.

9       I don't know how you can write so small and not see
10  well, Mr. Finton. Your writing is very small.

11      *THE DEFENDANT:* I'm nearsighted.

12      *THE COURT:* Make me go blind. Well,
13  Mr. Scherschligt -- I'm sorry, Mr. Finton -- you're really
14  asking for some records that -- if I think for some reason
15  your current defense counsel have not done their job in
16  getting the records they should have gotten, then talk to
17  the next counsel. Talk to the counsel that I appoint about
18  this because this is something that -- really talking about
19  a discovery process that counsel should handle. So you're
20  entitled to all fairness in the course of this litigation,
21  there's no question about that, but it's my practice that,
22  despite what we just handled as far as these other motions
23  you handled, I don't want to get into a practice of handling
24  pro se motions about discovery when somebody's represented
25  by a lawyer, so I'll let -- I'll leave it up to your counsel

```
 1   to take care of this issue.
 2           THE DEFENDANT:  Thank you.
 3           THE COURT:  Do you understand that concept?
 4           THE DEFENDANT:  Yes.
 5           THE COURT:  All right.  Anything else, Mr. Finton,
 6   Mr. Scherschligt?
 7           MR. SCHERSCHLIGT:  Your Honor, with the addition of
 8   this panel attorney and his obvious need to review a large
 9   portion of the discovery, I think that's going to
10   necessitate a continuance of the pretrial, trial dates, and
11   motions deadline.
12           THE COURT:  Yeah.  For now let's do this:  Let's
13   cancel the final pretrial, and then -- I'm confident you're
14   right about the trial date, but let's take one step at a
15   time.  So I'll wait and see a written motion when it becomes
16   evident that that's what you need.  I mean I don't know
17   what -- and once the CJA panel lawyer gets involved, and the
18   two of you and Mr. Finton can meet with this panel attorney,
19   you just have to work out between yourselves who plays what
20   role and how it's going to go.  And if there are problems,
21   there's something else we need to talk about, other motions
22   need to be filed, I'm just an hour and 15 minutes and a
23   rainstorm away, so let me know if I need to come back.
24           MR. SCHERSCHLIGT:  Could we also entertain a Motion
25   to Continue the deadline for the pretrial motions, which is
```

1   currently set for July 30th, this month?
2           *THE COURT:*  Yes, absolutely, we'll postpone that.
3   That will be off.
4           Mr. Risley, is there -- I don't want to ignore you
5   and your needs in this case.  Anything else we need to take
6   care of from your side of the ledger?
7           *MR. RISLEY:*  No, Your Honor.
8           *THE COURT:*  Okay.  Very well, folks.  If there's
9   nothing further, we stand adjourned, and I appreciate your
10  work.
11      ***(Court adjourned)***
12                          *   *   *   *

**REPORTER'S CERTIFICATE**

I, Laura A. Blatz, RPR, CRR, CCR(MO), Official Court Reporter for the U.S. District Court, Southern District of Illinois, do hereby certify that I reported in shorthand the proceedings contained in the foregoing 18 pages, and that the same is a full, true, correct, and complete transcript from the record of proceedings in the above-entitled matter.

Dated this 12th day of November, 2013.

/s/ Laura A. Blatz, RPR, CRR
_____